IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE A. HAMMOCK, | ) | CASE NO. 1:17-cv-00743 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CHARMAINE BRACY, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner Bruce A. Hammock ("Petitioner" or "Hammock"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1, Doc. 14, Doc. 15 ("Petition").[1] Hammock challenges the constitutionality of his conviction and sentence in *State of Ohio v. Bruce A. Hammock*, Case No. 15 CR 858 D (Richland County). Following his guilty plea, Hammock was convicted of possession of cocaine (count 1); having weapons while under disability (count 2); failure to comply with a police officer (count 3); improperly handling firearms in a motor vehicle (counts 4 and 5); carrying a concealed weapon (count 6); driving while under the influence (count 7); and firearm specifications on counts 1, 2, 3. Doc. 16-1, pp. 8-9, 10-13. On count 1, the trial court sentenced Hammock to a mandatory 3 years and an additional mandatory 1 year for the firearm specification to be served consecutive to the 3 year sentence on count 1. Doc. 16-1, p. 11. On counts 2 through 7, the trial court sentenced Hammock to 3 years community control to begin upon release from prison on count 1. Doc. 16-1, p. 12, Doc. 16-3, pp. 3-4.

---

[1] With leave, Petitioner amended his Petition twice to add additional grounds for relief. Doc. 14, Doc. 15.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation. Doc. 6. For the reasons set forth below, the undersigned recommends that the Court **DISMISS** and/or **DENY** Hammock's Petition.

### I. Factual Background

At the plea hearing, while inquiring of Hammock whether he understood what he was accused of, the trial court summarized the factual background leading to the charges brought against Hammock, stating:

> All these grew out of an incident that happened on September 22 of last year. They say the Mansfield Police Department was patrolling near North Mulberry and Park Avenue West, and they saw two vehicles driving around a road closed sign. Apparently they were contacted by the construction workers. You refused to roll down your window for a police officer while doing something with the center console. Apparently the officer walked between the two cars and you drove away at a high speed. You crashed into a tree on Mendota Street. You also rammed one of the officer's vehicles. They said when they did an inventory of your car they found a loaded handgun, thirty grams of cocaine, three times the F-1 quantity, in the center console.

Doc. 16-2, pp. 6-7 (Plea Hearing Transcript). *See also* Doc. 16-3, pp. 2-3 (Sentencing Hearing Transcript).

### II. Procedural Background

**A.  State Conviction**

In 2015, the Richland County grand jury (September 2015 Term) indicted Hammock on seven counts – count 1 (possession of cocaine, with a firearm specification); count 2 (weapon under disability, with a forfeiture specification); count 3 (fleeing and eluding, with a firearm specification) and counts 4 and 5 (improper handling of firearm in motor vehicle); count 6 (carry concealed weapon); and count 7 (driving while under the influence). Doc. 16-1, pp. 4-6.

Hammock pleaded not guilty on November 24, 2015. Doc. 16-1, p. 7. On February 8, 2016,[2] Hammock withdrew his not guilty plea and pleaded guilty to all charges. Doc. 16-1, pp. 8-9, Doc. 16-2. There was no agreement reached regarding the sentence that would be imposed but the trial court informed Hammock at his plea hearing that there was a presumption of prison on count 1, with a mandatory minimum of three years plus a mandatory one year on the firearm specification. Doc. 16-2, p. 9. Thus, the trial court indicated that the minimum prison sentence that Hammock would receive was four years. Doc. 16-2, p. 9. Hammock questioned the trial court on the mandatory nature of the offense and the trial court restated that Hammock would have to do four years mandatory prison, noting that the court might consider some type of non-prison sanction for the remainder of his time. Doc. 16-2, pp. 9-10. Hammock signed a written plea agreement which contained the following acknowledgement: "I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal by me must be filed within 30 days of my sentence." Doc. 16-1, p. 9. The trial court accepted Hammock's guilty plea and scheduled the matter for sentencing. Doc. 16-1, p. 9.

A sentencing hearing was held on April 11, 2016. Doc. 16-1, pp. 10-13, 83. On count 1, the trial court sentenced Hammock to a mandatory 3 years and an additional mandatory 1 year for the firearm specification to be served consecutive to the 3 year sentence. Doc. 16-1, p. 11. On counts 2 through 7, the trial court sentenced Hammock to 3 years community control to begin upon release from prison on count 1. Doc. 16-1, p. 12, Doc. 16-3, pp. 3-4.

**B.  Delayed direct appeal**

On June 10, 2016, Hammock, acting *pro se*, filed a notice of appeal (Doc. 16-1, pp. 14-15) and a motion for leave to file delayed appeal with the Fifth District Court of Appeals (Doc.

---

[2] The plea hearing was conducted on February 8, 2016, (Doc. 16-2), and the Admission of Guilt/Judgment Entry was signed on February 8, 2016 and docketed on February 10, 2016 (Doc. 16-2, pp. 8-9).

3

16-1, pp. 16-22).[3] Hammock argued that leave to file a delayed appeal was warranted because he was not informed by the trial court or his trial counsel of his appellate rights. Doc. 16-1, pp. 16-22. In a supporting affidavit, Hammock stated that the reason he failed to file a timely appeal was:

> (A) The trial court failed to advise me that I had a right to appeal and a constitutional right to be appointed appellate counsel.
>
> (B) My Trial counsel also failed to inform me that I had a constitutional right to appeal and a constitutional right to be appointed appellate counsel.
>
> (C) I was just brought aware of these rights on June 2, 2016 when informed by an inmate law clerk.

Doc. 16-1, p. 21 (footnote omitted). On June 14, 2016, the State filed a memorandum in opposition to Hammock's motion for delayed appeal and motion to dismiss appeal. Doc. 16-1, pp. 25-29. The State argued that the trial record "directly contradict[ed] [Hammock's] claim that he had no notice of his appellate rights or the thirty (30) day deadline[,]" pointing to the Admission of Guilt/Judgment Entry, which included Hammock's signature and an acknowledgement/understanding regarding appeals. Doc. 16-1, p. 26. On July 5, 2016, Hammock filed a response to the State's opposition. Doc. 16-1, pp. 30-34. Hammock argued that the sentencing entry showed that, following the pronouncement of sentence, the trial court did not advise him of his direct appeal rights; his constitutional rights were never explained to him; he was only advised to read the paragraph in the Admission of Guilt/Judgment Entry before signing it; and he was never advised of his constitutional right to appointment of appellate counsel. Doc. 16-1, pp. 30, 33. On July 12, 2016, the court of appeals denied Hammock's

---

[3] Hammock also filed a motion for appointment of counsel. Doc. 16-1, pp. 23-24. On August 3, 2016, the court of appeals overruled Hammock's June 10, 2016, motion for appointment of counsel, finding the motion moot in light of the court's denial of the motion for leave to file delayed appeal. Doc. 16-1, p. 44.

motion for leave to file a delayed appeal, noting that Hammock had signed a guilty plea form wherein he acknowledged being aware of his appellate rights. Doc. 16-1, pp. 35-36.

On July 22, 2016, Hammock filed a motion for reconsideration for delayed direct appeal with the court of appeals. Doc. 16-1, pp. 37-42. On August 1, 2016, the court of appeals denied Hammock's motion for reconsideration. Doc. 16-1, p. 43.

On August 1, 2016, Hammock, acting *pro se*, filed a notice of appeal from the court of appeals' July 12, 2016, denial of his motion for leave to file delayed appeal (Doc. 16-1, pp. 45-47) and a memorandum in support of jurisdiction (Doc. 16-1, pp. 48-57) with the Supreme Court of Ohio. Doc. 16-1, pp. 45-47. The State opposed Hammock's memorandum in support of jurisdiction. Doc. 16-1, pp. 58-75. On November 9, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Hammock's appeal. Doc. 16-1, p. 76.

**C.     Federal habeas corpus**

On April 10, 2017, Hammock, acting *pro se*, filed a federal habeas petition under 28 U.S.C. § 2254, raising two grounds for relief. Doc. 1.

> **Ground One**: INEFFECTIVE ASSISTANCE OF COUNSEL
>
> **Supporting Facts**: Counsel did not file an appeal and told me that I had no valid grounds when I asked him to file an appeal for me
>
> **Ground Two**: MOVANT WAS DENIED DUE PROCESS
>
> **Supporting Facts**: All the drugs confiscated to test the purity to come up with the exact weigh was not tested; which would have allowed for a sentence that is not contrary to the law

Doc. 1, pp. 5-7, Doc. 1-1, pp. 3-5.

With leave of court, Hammock filed two amendments to his Petition. In the first amendment, Hammock added the following three grounds for relief:

**Ground Three**: TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ACCEPTED DEFENDANT'S GUILTY PLEA BECAUSE DEFENDANT WAS NOT PROPERLY INFORMED THAT HIS SENTENCE WAS MANDATORY

**Ground Four**: THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT SENTENCED DEFENDANT FOR UNVERIFIED AMOUNT OF COCAINE

**Ground Five**: THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PETITIONER JUDICIAL DUE PROCESS

Doc. 14, pp. 2-4.

In his second amendment, Hammock added the following ground for relief:

**Ground Six**: THE FIFTH APPELLATE DISTRICT DENIED PETITIONER EQUAL PROTECTION OF THE LAW WHEN PETITIONER WAS DENIED LEAVE TO FILE A DELAYED APPEAL PURSUANT TO OHIO RULES OF APPELLATE PROCEDURE RULE 5(a)

Doc. 15, p. 2.

On October 10, 2017, the State of Ohio filed a Return of Writ. Doc. 16. On January 11, 2018, Hammock filed a Traverse. Doc. 19. In her Return of Writ, among other arguments, Respondent argues that Grounds Two, Three, Four and Five are procedurally defaulted. Doc. 16, pp. 16-17. In his Traverse, Hammock concedes that "Grounds Two through Five were submitted improperly as waived, premature, or procedurally defaulted." Doc. 19, p. 9. In light of the foregoing, the undersigned recommends that the Court DISMISS Grounds Two, Three, Four and Five. Grounds One and Six are addressed below in Section III.C.

### III. Law and Analysis

**A. Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[4] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as

---

[4] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans,* 228 F.3d at 681.

8

issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and

9

independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him." *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**C.     Grounds for relief**

  **1.  Ground One**

In his Petition and memorandum in support, Ground One is an alleged claim of ineffective assistance of counsel based on his counsel's failure to file an appeal when Hammock requested that an appeal be filed. More particularly, in the Petition, Ground One is presented as follows:

> **Ground One**: INEFFECTIVE ASSISTANCE OF COUNSEL
>
> **Supporting Facts**: Counsel did not file an appeal and told me that I had no valid grounds when I asked him to file an appeal for me

Doc. 1, p. 5.

In his memorandum in support, Ground One is presented at follows:

> COUNSEL WAS INEFFECTIVE FOR REFUSING TO APPEAL WHEN THE MOVANT REQUESTED THAT HE DO SO.

Doc 1-1, p. 3. In support of his claim of ineffective assistance of counsel in Ground One, Hammock attached an affidavit. Doc. 1-3. In that affidavit, Hammock states under penalty of perjury:

> I specifically requested to my attorney Mark Cockley, 16 W. 2nd Street, Mansfield, Ohio 44902, that I wanted to appeal my conviction in case number 15 CR 858 D. He told me that I had no valid ground for such an appeal.

11

Doc. 1-3, p. 1, ¶ 2.

In his Traverse, Hammock claims that Ground One as pled in his Petition is not the issue he intended to present. Doc. 19, p. 5. He contends that a fellow inmate assisted him with the filing of his Petition and that Hammock provided that individual with the issue of ineffective assistance of counsel but the fellow inmate added the "supporting facts" on his own. Doc. 19, pp. 4, 5. Hammock asserts that "[he] did not ask his counsel to file an appeal on his behalf, because he did not know of his right to appeal[,]" (Doc. 19, p. 5) and argues ineffective assistance of counsel based on counsel's alleged failure to advise him of his appellate rights (Doc. 19, p. 6).

The Court should DISMISS and/or DENY Ground One for the following reasons.

First, in state court, Hammock failed to present a claim that his counsel was ineffective for failing to file an appeal when requested to do so. Thus, to the extent that Hammock seeks federal habeas relief based on the claim as presented in his Petition and as presented in his memorandum in support of his Petition, the Court should dismiss Ground One as procedurally default. Further, Hammock's assertion in the Petition that he asked his counsel to file an appeal is in direct contradiction to arguments made throughout his state court proceedings, i.e., that he was unaware of his appellate rights. Thus, considering said contradictions, the Court should deny Ground One. Finally, as discussed below, Hammock now claims that he never asked his counsel to file an appeal. While this claim is contradicted by Hammock's sworn affidavit attached to his Petition, (Doc. 1-3), if the claim is not dismissed or denied for the reasons set forth above, based on Hammock's statements in his Traverse, the Court should find that Hammock has abandoned Ground One as presented in his Petition and DIMISS the claim.

Second, even though Hammock claims that Ground One was not intended to be presented as it was in his Petition, because Hammock's claim that his counsel was constitutionally ineffective for not advising Hammock of his appellate rights was first presented in his Traverse, the claim is not properly before this Court and need not be addressed. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (an argument first presented in a petitioner's traverse rather than in his petition was not properly before the district and it was not error for the district court to decline to address the argument); *see also Berlanga v. Winn*, 2017 WL 4863171, * 4 (6th Cir. May 11, 2017) ("A district court may decline . . . to address an issue raised for the first time in a traverse.") (citing *Tyler*, 416 F.3d at 504). Further, the Court should not excuse Hammock's failure to properly plead his Petition on the basis that he did not supply and/or add the "incorrect" supporting facts to the Petition. As reflected in the record, Hammock signed his Petition and he attached an affidavit swearing that he did ask his counsel to file an appeal. Doc. 1, p. 15, Doc. 1-3, p. 1, ¶ 2. Further, as reflected in the record, Hammock attended some college and had no difficulty reading. Doc. 16-2, p. 2. Thus, any attempt by Hammock to claim he did not understand what he was signing would be futile. Additionally, Hammock sought leave to amend his Petition and filed two amendments. Those amendments, however, did not include amendments to the supporting facts or arguments presented in his Petition with respect to Ground One.

Based on the foregoing, the undersigned recommends that the Court DISMISS and/or DENY Ground One.

### 2. Ground Six

**Ground Six**: THE FIFTH APPELLATE DISTRICT DENIED PETITIONER EQUAL PROTECTION OF THE LAW WHEN PETITIONER WAS DENIED LEAVE TO FILE A DELAYED APPEAL PURSUANT TO OHIO RULES OF APPELLATE PROCEDURE RULE 5(a)

Doc. 15, p. 2.

Hammock's claim in Ground Six is premised on his contention that the trial court and/or trial counsel did not advise him of his appellate rights and, therefore, his constitutional rights were violated when the state court of appeals denied his request to file a delayed appeal. In order to be entitled to federal habeas relief, a petitioner must demonstrate that a state court's determination was contrary to or an unreasonable application of clearly established federal law. Thus, federal habeas relief is not warranted based on violations of state procedural rules.

"The United States Supreme Court has held that a 'district court's failure to advise the defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission." *Allen v. Jeffreys*, 2008 WL 746671, *6 (N.D. Ohio Mar. 18, 2008) (citing *Peguero v. United States*, 526 U.S. 23, 24, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), which decided the issue in the context of 28 U.S.C. § 2255). Further, "[i]t has been held that 'due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights." *Crouse v. Bradshaw*, 2013 WL 5774702, *14 (N.D. Ohio Oct. 23, 2013) (citing *Wolfe v. Randle*, 267 F.Supp.2d 743, 746-748 (S.D. Ohio 2003)).

Here, even if the trial court or counsel did not advise him of his right to appeal, the record does not support a claim that he was ignorant of his appellate rights. As the record reflects, the plea form signed by Hammock, while represented by trial counsel, included the following statement: "I understand my right to appeal a maximum sentence, my other limited appellate rights, and that any appeal must be filed within 30 days of my sentence." Doc. 16-1, p. 9. Also, during the February 8, 2016, change of plea hearing, when the trial court asked Hammock how far he had gone in school, Hammock indicated he had some college. Doc. 16-2, p. 2. Hammock also indicated he had no problems reading. Doc. 16-1, p. 2. Additionally, during the hearing,

14

the trial court directed Hammock and his counsel to review the written summary of rights and waiver form and a break was taken to allow for that discussion. Doc. 16-1, pp. 11-12. Following that break, the trial court inquired as to whether Hammock had completed the paperwork, to which Hammock's counsel responded, yes. Doc. 16-1, p. 12. Then, the trial court asked Hammock whether he had "[a]ny question on [the] summary of rights and paperwork that [he] went over[]" and, Hammock indicated he did not. Doc. 16-1, p. 12. The trial court asked Hammock whether there was anything else Hammock wanted the court to explain. Doc. 16-1, p. 12. In response, Hammock inquired about the post-release control provisions. Doc. 16-1, p. 12. The trial court provided further explanation of the post-release control and Hammock had no further questions. Doc. 16-1, pp. 12-13.

Considering the foregoing, Hammock is unable to demonstrate that he was not aware of his right to appeal or the time for filing an appeal. The plea form apprised him of his right to appeal and the change of plea transcript shows that Hammock had some college education; Hammock had no problems reading; Hammock reviewed the plea form with his counsel prior to signing; and Hammock had an opportunity to ask the trial court questions. Thus, Hammock's claim that he was not informed of his appellate rights is without merit because it is unsupported by the record. *See e.g., Moss v. Warden, Lebanon Correctional Inst.*, 2010 WL 3703273, * 3-4 (S.D. Ohio June 7, 2010) (rejecting claim that petitioner's federal constitutional rights were violated where it was alleged that the trial court did not advise petitioner of any appellate process because petitioner had signed a plea form acknowledging his appellate rights and because there was no clearly established federal constitutional right to notice of state appellate rights); *Warren v. Warden, Noble Corr. Inst.*, 2008 WL 1732976, *4, 11-14 (S.D. Ohio Apr. 10, 2008) (rejecting a petitioner's claim that he had not been informed of his right to appeal where the petitioner had

15

signed two guilty plea agreements indicating he had been advised of his right to appeal and the time limit for filing an appeal and the record reflected that he had understood and discussed with counsel the guilty plea agreement); *Allen v. Jeffreys*, 2008 WL 746671, *6 (N.D. Ohio Mar. 18, 2008) (rejecting a petitioner's claim that he had not been informed of his right to an appeal where he signed guilty pleas that included the following language: "I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence[;]" he did not have questions for his attorney, the court or the prosecution; he had discussed the form with his counsel; and he indicated he had no problems reading or understanding English).

Hammock relies on *Wolfe v. Randle*, 267 F. Supp. 2d 743 (S.D. Ohio Mar. 27, 2003) to support his claim that the state court of appeals' denial of his motion for leave to file a delayed appeal resulted in a denial of his federal constitutional rights. Doc. 15, p. 2. However, *Wolfe* is not Supreme Court precedent. Further, the court in *Wolfe* recognized that "a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights." *Wolfe*, 267 F. Supp. 2d at 748 (citing *Peguero*, 526 U.S. at 29-30). Moreover, *Wolfe* is factually distinguishable from Hammock's case. In *Wolfe*, there was no evidence demonstrating that the petitioner was aware of his appellate rights through other means. *Id.* at 746. In contrast, as discussed above, Hammock signed a plea form which included an acknowledgement of his appellate rights. Thus, Hammock's reliance upon *Wolfe* is misplaced.

Additionally, Hammock's suggestion that federal habeas relief is warranted because state law requires that a defendant be informed of his appellate rights after sentencing whereas he signed the plea form prior to sentencing, (Doc. 19, pp. 7, 11), is also without merit. It is not a federal habeas court's function to interpret state law. Further, as discussed, whether or not

16

additional notification was provided at sentencing, the record demonstrates that Hammock signed a plea form which included an acknowledgement by him regarding his appellate rights. Further, the trial court provided him an opportunity to ask questions regarding those rights. As noted above, Hammock asked a question regarding post-release control, which was asked and answered but he had no questions regarding his appellate rights. Doc. 16-2, pp. 12-13.

Based on the foregoing, the Court should DENY Hammock's request for federal habeas relief based on the state court of appeals' denial of his motion for leave to file a delayed appeal.

## IV. Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS** and/or **DENY** Hammock's Petition.[5]

Dated: February 20, 2018

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[5] The Court should **DISMISS** and/or **DENY** Ground One; **DISMISS** Grounds Two through Five; and **DENY** Ground Six.